Day, J.
The plaintiff in error and others, -by an affidavit filed with the Mayor of the city of Kenton, Hardin county, Ohio, were charged with a violation of the pure food law of the state in the sale of an impure and adulterated article of food. Bissman was arrested and tried to a jury on the charge, found guilty as charged, and sentenced to pay a fine and the cost and expense of the proceeding. The court of common pleas affirmed the judgment of the Mayor, and plaintiff in error, *715 not content witli the disposition of his case made by the .lower courts., prosecutes error here to obtain a reversal of the judgment and a new trial because of errors said to be apparent on the record.
From the bill of exceptions we learn, that Bissman is the general manager of the business of an incorporated company located in the city of Mansfield, Richland county, Ohio, and engaged in the business of wholesaling articles of food. Bissman has his residence in Richland county. In managing and conducting the business of the corporation lie has employed traveling salesmen, who solicit and receive orders for goods, from retailers, in counties other than Richland. One of these salesmen solicited and received the order of the prosecuting witness in the city of Kenton, Ohio, for a package of tomato ketchup of a certain brand, and the goods were delivered according to order in the city of Kenton. The ketchup was adulterated, contained a noticeable quantity of salicylic acid, an added substance injurious to health and not a necessary ingredient in its manufacture; but neither Bissman or the saleman, had knowledge of such fact.
There are numerous assignments of error in the petition in error, but they are all comprehended in two,which plaintiff in error urges in argument and relies on for a reversal of the judgment, to-wit:
1. Can a defendant properly be taken out of his county and tried in a county other than where his residence is, for a sale made by an authorized agent of a corporation of which the defendant has the general management, supervision and control ? .
2. Is the absence'of knowledge of the adulteration and impure character of the article of food sold a defense to a prosecution for such sale?
(1.) The person who has imposed upon him the general management, direction and control of the business of an incorporated company, in the respect of its business conduct, *716 stands for the corporation, and is it.s only visible active, tangible head, Such person is, in that respect, the principal in the conduct of its business, and all those who act on his procurement and under his directions are, in the full sense, his •agents, or aids, in transacting the buisness of the company. It is elementary that “whatever an agent does within the ■scope of his authority, is, in leagl effect, the act of the principal, who is entitled to its advantages and subject to its liabilities.” This is the doctrine of the civil law, and it also obtains in the criminal practice. A very familiar' principle of the criminal law is that, “where a criminal act is committed by one person upon the procurement of another, both the procurer and the procured are guilty as principals.” “All who aid or participate in the commission of a misdemeanor are principals.” 25 Ohio St. 381. “Whoever aids, abets or procures another to commit any offense may be prosecuted and punished as if he were the principal offender. ’ ’ Sec. 6804, Rev. Stat. From all this it is quite certain that, in law, the plaintiff in error, Bissman, as principal, is responsible and liable for the act done by his agent, and if an offense has been committed by the sale of the article of food named,- the plaintiff in error is guilty of the offense as a principal party. This being the law, the question of venue becomes one of fact merely, and is: Did plaintiff in error, through his agent, make sale of impure food, as charged, in the county of Hardin ? On this question the evdience is clear. The sale was made in Hardin county. The order was solicited in that county, and accepted there. The goods were to be delivered and were delivered there, so that the sale was complete and perfect in every detail, and we hold the prosecution was properly instituted in that county.
(2.) As a general rule guilty knowledge or intent is an essential element in crime at the common law,and also in statutory crime, but not always. The rule has its exceptions, and *717 especially so, in statutory definition of crime. There are many cases, in statutes providing police regulations, making, certain acts penal, where this element is wholly disregarded. The distinction is noted in 3, Greenl. Ev. sec. 21, as follows: “The rule — that ignorance of fact will excuse — would seem to hold good in all cases where the act, if done knowingly, would be malum in se. But where a statute commands that an act be done or omitted, which in the absence of such statute might have been done or omitted without culpability, ignorance -of the fact, or state of things contemplated by the statute, it seems will not excuse its violation. * * * Such is also the case in regard to many other fiscal, police and other laws and regulations, for the mere violation of which,, irrespective of the motives or knowledge of the party, certain-penalties are enacted; for the law, in these cases, seems to-bind the parties to know the fact and to obey the law at their peril. ’5 A relaxing and partial departure from old rules seems proper, and even necessary, in all matters of legislation designed to secure to the citizen the benefits of pure food products and to afford protection against greedy and not over-scrupulous dealers. Says the Supreme Court of Pennsylvania: 139 Pa. St. 247, reported in 23 A. S. R. 182. “It is for the legislature to determine whether the public injury, threatened in any particular matter, is such and so great as to justify an absolute and indiscriminate prohibition. Even if, in the honest prosecution of any particular . trade or business, conducted for the manufacture of articles-of food, the product is healthful and nutritious, yet if the opportunities for fraud and adulteration are such as to threaten the public health, it is undoubtedly in the power of the legislature, either to punish those who knowingly traffic in the fraudulent article, or by a sweeping provision to that effect, to prohibit the-manufacture and sale altogether.”
The enactment of the statute in question, .under which plaintiff in error was convicted and sentenced, was a proper *718 exercise of the police power, and file form of the statute clearly evidences the purpose of the legislature to provide the largest measure of protection possible by making the provision prohibitory. And the prohibition is absolute: “That no person shall, within this state, manufacture for sale, offer for sale, or sell any drug or article of food which is adulterated,” etc. There is nothing in the wording of the statute defining the offense from which it can be held to imply that the forbidden act shall be done knowingly, willfully or purposely. The declaration is definite and clear, and the intend plainly manifest, that the manufacture or sale of adulterated or impurtyirticles of food, with or without knowledge of such adulteration or impurity, is unlawful; and it follows, that persons who engage in such traffic, do so at their peril; and that they cannot set up their ignorance of the character and quality of the article they sell as a defense to a prosecution for unlawful selling.
J. C. Laser, Black & Mahon, for plaintiff in error.
W. T. Clark, F. C. & J. W. Dougherty, for defendant in error.
The judgments affirmed.